# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NORRIS WLEH, | * |
| Plaintiff | * |
| v. | * |
| | CIVIL NO. JKB-18-1971 |
| NEW AGE PROTECTION, LLC, | * |
| Defendant | * |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

### *I. Background*

Plaintiff Norris Wleh filed this case in the Circuit Court for Baltimore City against his former employer, New Age Protection, LLC ("New Age"), claiming unlawful retaliation under Maryland and federal law for engaging in protected employment activity, fraud, and breach of contract and asserting a request for "equitable relief to establish an independent inquiry and for damages to make Plaintiff whole." (Compl., ECF No. 1-2; Am. Compl., ECF No. 1-8.) New Age removed the case to this Court because of federal-question jurisdiction over the claim brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). (Notice of Removal, ECF No. 1.) Supplemental jurisdiction over the state law claims exists under 28 U.S.C. § 1367(a).

Pending before the Court is New Age's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(1) and for Failure to State a Claim Pursuant to Rule 12(b)(6) or, in the Alternative, to Transfer Venue. (ECF No. 8.) The motion has been briefed (ECF Nos. 12, 14), and no hearing is necessary, Local Rule 105.6 (D. Md. 2016). The motion to

dismiss will be granted as to the federal claim and the case will be remanded to Maryland state court for resolution of the state claims.

## *II. Standard for Dismissal for Lack of Subject-Matter Jurisdiction*

The burden of proving subject-matter jurisdiction is on the plaintiff. A challenge to jurisdiction may be either facial, *i.e.*, the complaint fails to allege facts upon which subject-matter jurisdiction can be based, or factual, *i.e.*, jurisdictional allegations of the complaint are not true. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). *See also Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (same); *Richmond, Fredericksburg & Potomac Ry. Co.*, 945 F.2d 765, 768 (4th Cir. 1991) (same). In the case of a factual challenge, it is permissible for a district court to "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg*, 945 F.2d at 768 (citing *Adams*, 697 F.2d at 1219).

## *III. Standard of Dismissal for Failure to State a Claim*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556

2

U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## *IV. Allegations of the Complaint*

In his amended complaint, Wleh alleges he worked for New Age from May 2013 through June 2015. (Am. Compl. ¶ 2.) New Age provides security services in the State of Maryland, and during the time of Wleh's employment with New Age, he was a security officer in good standing. (*Id.* ¶¶ 3, 4.)

Wleh filed a charge of discrimination ("First Charge") with the Equal Employment Opportunity Commission ("EEOC") around April 2, 2015, alleging a failure to promote based upon sex and national origin. (*Id.* ¶ 9.) As a result of mediation, Wleh and New Age executed a Mediation Settlement Agreement ("MSA") on June 2, 2015. (*Id.* ¶¶ 10, 11; Ex. A, MSA, ECF No. 1-8.) Under the MSA, Wleh agreed not to institute a lawsuit based on his First Charge, requested closure of the same, and agreed to resign his employment on the effective date of the MSA in exchange for New Age's payment, within fourteen days of the MSA's execution, of four weeks of pay at Wleh's then-current pay rate, with the "usual payroll deductions"; its agreement to provide Wleh with a positive letter of reference; and its agreement not to contest any claim made by Wleh for unemployment compensation. (MSA 1-2.[1]) The MSA also included a confidentiality agreement. (*Id.* 2.)

In accordance with the MSA, Wleh resigned his position effective immediately on June 2, 2015. (Am. Compl. ¶ 12-E.) Although New Age apparently tendered a check for the four weeks of wages, Wleh alleges New Age made unusual deductions that erroneously deprived

---

[1] The signature page is found at ECF No. 1-2, page 13.

3

him of $636.56 and that New Age refused to correct the error at any time within 2015 or 2016. (*Id.* ¶ 14.) Wleh does not say whether he cashed the check or not. Wleh "within a week or so discovered his claim for unemployment benefits had been denied by the State of Maryland."[2] (*Id.* ¶ 15.) Wleh "appealed his unemployment denial, had a phone hearing with the State, and during this phone call hearing, [New Age] vigorously opposed [Wleh's] claim for unemployment benefits, stating that he had received severance as well as quit voluntarily." (*Id.* ¶ 16.) As a result, Wleh was denied unemployment benefits. (*Id.* ¶ 17.) At an in-person hearing, New Age's representative "appeared and opposed" Wleh's claim, citing facts from the confidential EEOC mediation and indicated that Wleh had voluntarily quit. (*Id.* ¶ 18; Ex. B, Unemp. Ins. Appeals Decision.) This hearing resulted in an affirmance of the claim's denial. (*Id.*)

Wleh found work in September 2015, but was denied unemployment benefits of approximately $3,267 during Summer and early Fall 2015. (Am. Compl. ¶¶ 19, 27.) Wleh complained to the EEOC about New Age's conduct and New Age then filed with the EEOC Check Number 4710, dated January 31, 2017, "with an illegible signature, indicating payment in full to [Wleh] for the lost unemployment benefits," although the check was never provided to Wleh. (*Id.* ¶ 20.) Around December 31, 2017, New Age issued Check Number 3267 to Wleh "for full payment of the value of his denied unemployment benefits." (*Id.* ¶ 21.) Wleh alleges this payment "was pursuant to a small claims court enforcement action that sought solely recovery of the value of the wrongfully denied unemployment benefits." (*Id.* ¶ 22.)

On August 1, 2017, Wleh filed a Charge of Discrimination ("Second Charge") with the EEOC alleging New Age had retaliated against him by breaching the MSA; specifically, Wleh alleged that New Age had breached the MSA by "denying [his] unemployment," giving to the unemployment agency a copy of the MSA, not paying him all of his final pay, and taking out too

---

[2] The Court infers Wleh means "within a week or so" of the signing of the MSA.

4

much tax (from his wage payment check). (Am. Compl., Second Charge, Ex. C.) The Second Charge notes the acts of discrimination took place on June 2, 2015; Wleh checked the box that indicated there was a "continuing violation." (*Id.*) He also states in the Second Charge,

> I eventually had to sue the employer in state court for the breach and in February 2017, the state court found in my favor. From June 2, 2015 to date, the employer has refused to pay me the four weeks of pay as agreed in the Mediation Settlement or as ordered by the court. In addition because of the employer's failure to adhere to the terms of the Mediation Settlement Agreement, I was not able to collect any of my unemployment benefits. . . . My former employer did not give me a reason for its continued failure to pay me the four weeks pay. . . . I believe that I have been retaliated against in violation of Title VII . . . for engaging in a protected activity (the filing of the original charge (531-2015-01191) with respect for continued breach of settlement agreement and refusal to pay me my final pay.

(*Id.*) The Second Charge resulted in a right-to-sue notice dated January 9, 2018. Wleh filed suit in the Circuit Court for Baltimore City on April 5, 2018.

In Count II, which is the federal claim under Title VII, Wleh alleges New Age retaliated against him for making the First Charge of discrimination, pursuing it, and participating in the EEOC mediation on June 2, 2015, by the following actions:

> (A) inducing him to resign from employment pursuant to settlement,
> (B) denying him owed wages in hand as provided under the settlement,
> (C) denying him unemployment benefits,
> (D) disclosing confidential mediation information to the State of Maryland, Unemployment Benefits Division, at the live, in-person hearing without any court and/or administrative order requiring this breach of confidentiality, and so without good cause,
> (E) causing him loss of income, and denying him confidentiality as promised, and
> (F) other conduct to be discovery [*sic*] and/or offered into evidence at trial.

(Am. Compl. ¶ 42.)

## V. Analysis

New Age challenges Wleh's suit, which is premised upon the August 1, 2017, Second Charge, as being time-barred because the Second Charge was not filed within 300 days of the alleged acts of retaliation. The Court finds this argument meritorious.

Under 42 U.S.C. § 2000e-3(a), retaliating against an employee for making a charge of employment discrimination is itself a form of discrimination and is an unlawful employment practice. Filing a timely administrative charge of discrimination is a prerequisite for filing suit in a civil action. 42 U.S.C. § 2000e-5(f). *Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 210 (2010). According to 42 U.S.C. § 2000e-5(e)(1), the time for filing an administrative charge of discrimination is 180 days after the alleged unlawful employment practice occurred; if, however, the administrative charge is co-filed with an equivalent state agency, then the charge shall be filed within 300 days after the alleged unlawful employment practice occurred. "[F]ailure to file a timely EEOC charge is a basis for dismissal under Rule 12(b)(6) for failure to state a claim." *Loconte v. Montgomery Cty., Md.*, Civ. No. PWG-17-2052, 2018 WL 3642586 at *3 (D. Md. Aug. 1, 2018).

The Second Charge was filed with both the EEOC and the D.C. Office of Human Rights. (Am. Compl., Ex. C, Second Charge.) It is not clear why it was co-filed with the latter office, when Wleh resides in Maryland and the conduct complained of also occurred in Maryland, but the Court gives him the benefit of the doubt that he is entitled to the 300-day deadline set forth in § 2000e-5(e)(1). Applying the deadline means that the allegedly retaliatory activity must have occurred no earlier than October 5, 2016.

"Determining whether a plaintiff's charge is timely thus requires 'identify[ing] precisely the "unlawful employment practice" of which he complains.'" *Lewis*, 560 U.S. at 210-11. As

6

set forth in Count II, the particular unlawful employment practices of which Wleh complains occurred in June 2015 or shortly thereafter. The Second Charge was filed on August 1, 2017—far beyond the 300-day period applicable to New Age's allegedly retaliatory conduct. Wleh attempts to avoid the time bar by contending New Age's conduct was "continuing" up to the present. Wleh argues the Second Charge "relates back to Sept. 27, 2016, three hundred days prior" because New Age "did not correct its conduct during 2015 and 2016."[3] (Pl.'s Opp'n Supp. Mem. 4, ECF No. 12-1.) But the breach of the MSA occurred, if it occurred, in 2015. Nothing in particular occurred on October 5, 2016 (or, for that matter, on September 27, 2016), to set that date as the marker for allegedly retaliatory conduct by New Age against Wleh.

He also points to the check dated January 31, 2017, that New Age filed with the EEOC to show payment of unemployment benefits to Wleh and says that filing was an act of retaliation, but it is implausible to view New Age's action on January 31, 2017, as anything other than an effort to settle a dispute, rather than to create a new one. The Court notes that the MSA did not require New Age to pay unemployment benefits; instead, New Age agreed not to oppose Wleh's state government application for unemployment benefits. It is also noted that the payment was in response to a lawsuit Wleh filed against New Age. (Am. Compl. ¶ 22.)

Finally, he contends he checked the box "continuing action" on the Second Charge. A label, of course, is not conclusive, and the Court has already found his argument that retaliation was continuing into the 300-day period to be unpersuasive.

Wleh further argues that even if his Second Charge was not brought within 300 days of the allegedly discriminatory conduct, he is entitled to equitable tolling. Filing of a timely EEOC charge is not a jurisdictional prerequisite to filing suit, but is a requirement that is subject to equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Even so,

---

[3] It is unclear how Wleh calculates the 300-day period as beginning on September 27, 2016.

equitable exceptions to the statutory limitations period of § 2000e-5(e)(1) "should be sparingly applied." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987).

> Equitable tolling applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action. To invoke equitable tolling, the plaintiff must therefore show that the defendant attempted to mislead him and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge.

*Id.* (citations omitted).

Wleh says he was misled by New Age's agreement to the MSA in believing his discrimination complaints had been settled. (Pl.'s Opp'n Supp. Mem. 6.) To the extent that is true, though, that action occurred in June 2015, more than two years before he filed his Second Charge, and Wleh was clearly aware of any alleged breach in June 2015. Wleh fails to plausibly allege that his waiting so long to file his administrative charge constituted reasonable reliance. Wleh also attempts to rely on the January 31, 2017, check in settlement of the judgment he received on his suit claiming breach of contract by New Age in failing to pay him. But even if he had filed an administrative charge on that date, he would have been time-barred because the events of which he complains happened in June 2015. Wleh has not made any showing that New Age misled him or that he reasonably relied on a misrepresentation. Thus, he is not entitled to equitable tolling.

Wleh's final argument invokes *Nealon v. Stone*, 958 F.2d 584 (4th Cir. 1992), for the proposition that one need not exhaust administrative remedies and may file suit on a retaliation claim if the retaliation claim is reasonably related to the original administrative discrimination charge. This is a curious argument since Wleh, in fact, filed an administrative charge of retaliation predicated on the June 2015 breach of the MSA. However, since *Nealon* is clear that one need not file an administrative charge of retaliation premised upon and reasonably related to

8

an earlier administrative charge of discrimination, the time bar in § 2000e-5(e)(1) for Wleh's retaliation claims is effectively negated *if* the First Charge is properly before the Court. It is not. In *Jones v. Calvert Group, Ltd.*, 551 F.3d 297 (4th Cir. 2009), the Fourth Circuit carefully distinguished between the two administrative charges preceding the filing of that lawsuit. The Court found that the retaliation claim in the lawsuit was premised upon retaliation for the plaintiff's first EEOC charge as well as the second charge, but different acts of retaliation were at issue in relation to the two charges. Only the second charge was properly before the Court and, thus, the acts of retaliation following the second charge were also properly before the Court. *Id.* at 304. *Jones* did not, however, permit acts of retaliation for the filing of the first charge to remain in the case.

Here, Wleh did not file suit based upon the First Charge, so the alleged retaliation in response to the First Charge is not properly part of his present lawsuit. His Second Charge seeks to revive those earlier acts of alleged retaliation, but the Second Charge was filed beyond the 300-day deadline, so his present claim of retaliation premised upon those earlier acts is time-barred. Furthermore, Wleh's characterization of New Age's conduct as "continuing" is implausible. His theory seems to be that every day after a breach brings a new, actionable breach, perhaps in perpetuity. (Pl.'s Opp'n Supp. Mem. 8-9.) He cites no authority for such an unsustainable theory. He also posits that his first charge can be reopened and, therefore, can be considered the basis for this lawsuit. (*Id.*) Again, he offers no authority to support that position. The federal claim must be dismissed.

*VI. Conclusion*

The Court will construe New Age's motion as one for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) and grant it as to Count II. The rest of the case will be remanded to the state court. A separate order follows.

DATED this __6__ day of November, 2018.

BY THE COURT:

/s/ James K. Bredar
James K. Bredar
Chief Judge
